IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CLASSROOMDIRECT.COM, LLC, } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v. } | 06-AR-1669-S |
| } | |
| RE-PRINT/DRAPHIX, LLC, } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

Before the court is the motion of defendant, Re-Print/Draphix, LLC ("Re-Print"), to dismiss the present action under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In the alternative, Re-Print moves the court to stay proceedings, pursuant to Rule 12(b)(1), until such time as a parallel state court lawsuit, dealing with what Re-Print characterizes as overlapping issues of law and fact, is resolved. For the reasons that follow, both motions will be denied.

**I. Facts**

This case is the latest chapter in the continuing dispute[1] between Re-Print and plaintiff, Classroomdirect, LLC ("Classroom"). Classroom is engaged in the sale of educational and classroom supplies through its website and catalogue. Before 2001, Classroom was also engaged in the sale of engineering, architectural, and

---

[1] This is the third suit between the parties and the second before this court.

1

drafting supplies to professionals in these industries.  Classroom is the holder of the federally registered service mark "RE-PRINT." According to Classroom, the market for educational supplies, which includes both individual teachers and school districts, has long associated the RE-PRINT mark with Classroom's sales activities. Although it stopped using the mark in 1998, Classroom claims that its customers still use the RE-PRINT name when placing orders and, more importantly perhaps, associate the RE-PRINT mark with Classroom.

In 2001, Classroom sold the assets relating to its engineering, architectural, and drafting supplies business to a new entity which was organized as Re-Print/Draphix, LLC. Although retaining ownership of the mark, Classroom entered into a Service Mark Licensing Agreement (the "Service Mark Agreement") with this new entity permitting it to use the name RE-PRINT in connection with the sale of engineering, architectural, and drafting supplies. It is this agreement that is the subject of the litigation.

Under the terms of the agreement, Re-Print was prohibited from using the mark "in connection with any sales, even of engineering, architectural, or drafting supplies, in the pre-K through 12 educational or school field." Classroom itself retained the right to use the mark in this context. Problems first arose when Re-Print entered the educational sales business using the name "Teacher Direct." Re-Print's sales activities prompted the first

2

suit between the parties, CV-05-AR-0853-S, which was ostensibly resolved when the parties entered into a Settlement Agreement. This agreement did not, however, bring an end to the dispute. After this court determined that it lacked jurisdiction over Classroom's motion to enforce performance of that agreement, Classroom brought suit in state court, alleging both breach of contract and unfair competition.  Classroom also opened in this court the question of the validity of the Settlement Agreement in CV-05-AR-0853-S, presenting this court with a Rule 60(b)(3) motion in the closed case, alleging that the Settlement Agreement was procured through Re-Print's fraud and misrepresentation.

The present suit stems from what Classroom characterizes as a material breach of the Service Mark Agreement.  According to Classroom, Re-Print has been sending its customers W-9 forms containing the RE-PRINT mark.  In its view, as appears in its current complaint, using the mark in this way violates the terms of the Service mark Agreement and leads to confusion among customers who associate the RE-PRINT mark with Classroom.

## II. Analysis

Re-Print bases its first motion, a 12(b)(6) motion to dismiss, on the terms of the Settlement Agreement, arguing that the release provisions of the agreement operate to bar Classroom's suit. Classroom has two responses, arguing both that the Settlement Agreement does not operate as a release for its claims and that the

Settlement Agreement should be disregarded because it was procured by fraud and/or misrepresentation.[2]  Re-Print's second motion, a Rule 12(b)(1) motion to stay, argues that because a similar suit is currently pending in state court, this court should abstain from exercising its jurisdiction in this case.  Each motion will be addressed in turn.

   *a) Re-Print's Motion to Dismiss*:

   According to Re-Print, the plain terms of the Settlement Agreement release it from liability for all claims which arose prior to July 1, 2005.  Classroom, in its complaint, alleges that Re-Print's misconduct in this case began on February 1, 2005.  Therefore, according to Re-Print, such claims are barred.

   As Re-Print correctly notes, a Rule 12(b)(6) motion is appropriate where it appears, beyond a doubt, that the plaintiff can prove no set of facts that would entitle it to the relief it is seeking.  *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99 (1957).  In deciding a Rule 12(b)(6) motion, this court should not "consider anything beyond the face of the complaint and documents attached thereto . . . ."  *Financial Security Assur. Inc. v. Stephens, Inc.*, 450 F.3d 1257 (11th Cir. 2006).  The first issue, then, for this court is to determine whether or not the Settlement Agreement,

---

[2] The pending Rule 60(b)(3) motion in CV-05-AR-0853-S, the first case filed between these parties, need not be ruled upon in order for this court to rule on the motions in the instant case.

which is not attached to Classroom's complaint, can be fairly considered in ruling on a Rule 12(b)(6) motion. This court finds that it cannot unless it construes the motion as a motion for summary judgment.

In the Eleventh Circuit, a court may consider an ancillary document in a motion to dismiss where the document is "(1) central to the plaintiff's claim and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Given that the Settlement Agreement is being contested by Classroom's Rule 60(b)(3) motion in the other case before this court, it is difficult to characterize that agreement as "undisputed." Even so, it is not necessary to address this part of the two-part test in this opinion because the Settlement Agreement is not "central to the plaintiff's claim."

In an attempt to establish that the Settlement Agreement meets the two-part test, Re-Print notes that Classroom quoted the agreement verbatim in its complaint. Therefore, according to Re-Print, the agreement is central to Classroom's claims and it may be considered on defendant's motion. It is also true, of course, that this court takes judicial notice of materials in other cases in this court when properly called to the court's attention. What Re-Print understandably neglects to mention is that Classroom's verbatim quotation from the Settlement Agreement is found in the section of its complaint entitled "Other Litigation Between the Parties." The purpose of this section is only to provide

5

background information, and its contents do not form the basis for any of Classroom's claims.

This suit is about whether or not Re-Print violated the terms of the Service Mark Agreement in its business activities following the settlement of the first suit. Despite Re-Print's arguments to the contrary, the instant suit is not about the Settlement Agreement, although it may eventually be implicated. As the Eleventh Circuit stated in *Stephens*, the centrality analysis properly focuses on "whether the plaintiff would have had to offer the document in order to prove its case." 450 F.3d at 1264. Given that the Settlement Agreement is immaterial to Classroom's suit in this case, the centrality requirement has not been met. It is therefore inappropriate for this court to consider the Settlement Agreement on Re-Print's motion to dismiss, despite the court's judicial knowledge of it.

Re-Print has not asked the court alternatively to consider its Rule 12(b)(6) motion as a Rule 56 motion for summary judgment. A district court must convert a motion to dismiss into a motion for summary judgment only if it considers materials outside of the complaint. *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir 2005). *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265 (11th Cir. 2002) (noting that "[w]henever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion."). Re-Print's motion

6

relies on materials outside of the pleadings in this case. Given that the parties have had no opportunity to present materials necessary to met the evidentiary burdens imposed by Rule 56 and that Re-Print has not mentioned Rule 56, this court will not convert the motion to one for summary judgment and will deny the Rule 12(b)(6) motion, acknowledging the possibility that the Settlement Agreement, if valid, may preclude some of Classroom's claims.

*b) Re-Print's Motion to Stay*

In addition to its motion to dismiss, Re-Print brings a Rule 12(b)(1) motion to stay proceedings in this action pending the resolution of the state court case between the parties. During oral argument, the parties informed the court that the state court case is set for trial on October 30, 2006. Re-Print bases its motion on the *Colorado River* doctrine which, where applicable, permits a federal district court to decline its otherwise proper jurisdiction over a case where an ongoing parallel action is proceeding in state court. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S. Ct. 1236, (1976). The *Colorado River* doctrine, one of several bases for abstention, is the only justification employed by Re-Print.

Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813. Generally, the

7

federal courts are under a "virtually unflagging obligation . . . to exercise the jurisdiction given to them." Id. at 817. Therefore, it is only under "exceptional circumstances" that this court should abstain because a similar action between the parties is proceeding in state court. Id. at 813. The present question, then, is whether the state court action between Classroom and Re-Print presents such an "exceptional circumstance."

Given the extraordinary nature of abstention, it is not surprising that, in the Eleventh Circuit, the presumption is "heavily weighted in favor of the exercise of jurisdiction." *Ambrosia Coal & Construction Co. v. Morales*, 368 F.3d 1320, 1332 (11th Cir. 2004). However, this court recognizes that the *Colorado River* doctrine is to be applied in a "pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21, 103 S. Ct. 927, 940 (1983).

The opinion in *Colorado River* set forth the factors that must be considered in applying the doctrine. These factors are (1) whether one of the courts has assumed jurisdiction over the property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect that parties' rights. As Classroom rightly notes, only the middle three

factors are cited by Re-Print as justifying abstention in this case.[3]

The gravamen of Re-Print's abstention argument is simply that there is on-going litigation between the parties in state court and that, if litigation were to proceed in this court, it would be unfairly duplicative. Re-Print notes that the case in state court was initiated before this case was filed, and that the contract claim in this case is governed by Alabama state law, as is the case in state court. Re-Print is correct as to each of these representations. However, it is the conclusion of this court that none of Re-Print's arguments offer sufficient justification for this court to abstain from exercising its jurisdiction. Exercising jurisdiction and concluding this case before October 30, 2006 are not the same thing.

In the *Ambrosia Coal* case, the Eleventh Circuit state "the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Ambrosia Coal*, 368 F.3d at 1328. To reiterate, only in **exceptional** circumstances will this court be justified in declining jurisdiction in contravention of this general rule. Applying this standard to the present case, the

---

[3] Factors (1) & (2) are not discussed by Re-Print in its brief. Under *Ambrosia Coal*, factor (6) is neutral and will only "weigh in favor or against abstention when one of the fora is inadequate to protect a party's rights." *Ambrosia Coal*, 368 F.3d at 1334.

9

court finds that Re-Print has presented no evidence to suggest that this case is so extraordinary as to merit abstention.  To the contrary, this is just another case where an overlapping or competing suit is proceeding in the state court.  It happens often.  As such, Re-Print's abstention argument is without foundation in the *Colorado River* doctrine and inappropriate.  Therefore, the Rule 12(b)(1) motion is due to be denied.

### III. Conclusion

Having determined that Re-Print's motions, both to dismiss and to stay proceedings, are without merit, this court will deny each by a separate order.

Done this 18th day of October, 2006.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE