IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
CLASSROOMDIRECT.COM, LLC,      }
                               }
     Plaintiff,                }
                               }      CIVIL ACTION NO.
v.                             }      06-AR-1669-S
                               }
DRAPHIX, LLC,                  }
                               }
     Defendant.                }
```

**MEMORANDUM OPINION AND ORDER**

Before the court are the cross-motions of plaintiff, Classroomdirect.com, LLC ("Classroom"), and of defendant, Draphix, LLC ("Draphix"), for summary judgment on Classroom's 15 U.S.C. § 1120 claim alleging that Draphix fraudulently procured a trademark registration. Both parties argue that they are entitled to summary judgment on the merits. Additionally, Draphix contends that Classroom's § 1120 claim is foreclosed by the *res judicata* effect of a state court judgment. The court has previously granted summary judgment to Classroom as to the question of liability on its breach of contract and trademark infringements claims. For the reasons that follow, the court will deny both motions for summary judgment with respect to the § 1120 claim. Although the court agrees with Draphix that this controversy has gone on for far too long, a proposition undisputed by Classroom, genuine issues of material fact precluding summary judgment cannot be ignored in the name of closure.

1

*Factual Background*[1]

The saga that is *Classroom v. Draphix* began with a case brought before this court on April 25, 2005 ("the first federal action").[2] In that case, Classroom, a seller of school supplies, brought unfair competition claims under the Lanham Act and under Alabama law arising out of Draphix's expansion into the educational supply market under the name "Teacher Direct." With this expansion, Teacher Direct emerged as a direct competitor to Classroom. In addition to complaining about Teacher Direct's sales activities, Classroom alleged that it was receiving orders from customers that evidenced confusion between the two companies. The first federal action was seemingly resolved when the parties entered into a Settlement Agreement. The settlement contained the following relevant provisions: 1) Draphix represented and warranted that it had not "received any orders (whether or not filled) that bear any information indicating the order was directed to or intended for CLASSROOM DIRECT," 2) Classroom agreed to provide "copies of any and all customer orders it had received (whether or not filled) that bear any objective information indicating that

---

[1] The facts of this case are well-recounted in the previous opinions of this court (Doc. # 9 and # 63) and in the January 28, 2008 opinion the Eleventh Circuit. *See Classroomdirect.com, LLC v. Draphix, LLC*, 2008 WL 185512 (11th Cir. Jan. 23, 2008). The facts are also comprehensively detailed in the April 25, 2008 opinion of the Supreme Court of Alabama. *See Classroomdirect.com, LLC v. Draphix, LLC*, -- So. 2d --, 2008 WL 1838302 (Ala. April 25, 2008). Therefore, the court will only briefly sketch out the facts relevant to the pending motions.

[2] The case number for the first federal action is 05-AR-0853-S.

2

those orders were directed to or otherwise intended for TEACHER DIRECT."

Shortly after the Settlement Agreement was signed, the parties accused each other of breaching it. Classroom claimed that Draphix breached the agreement when it published its back-to-school catalog using certain images and phrases it had agreed to discontinue using. Draphix accused Classroom of failing to produce all of the orders evidencing confusion that it had mentioned in its complaint. On July 21, 2006, eight days after the first federal action was dismissed in light of the settlement, Draphix filed a motion to enforce the settlement agreement. This court determined that it lacked jurisdiction over Draphix's motion. While Draphix's motion was still pending, Classroom filed suit against Draphix in the Circuit Court of Jefferson County stating state law claims for breach of contract and unfair competition.

In December 2005, Classroom discovered that one of its former employees, Kim Burch ("Burch"), had been intercepting customer orders that indicated confusion between Classroom Direct and Teacher Direct and sending them to Teacher Direct beginning in March 2005 and continuing until her employment was terminated. Classroom fired Burch in October 2005 after it came to light that she had been e-mailing Classroom's financial information to a friend at Teacher Direct. After her termination, Teacher Direct hired Burch. In response to this new information, Classroom

amended its state court complaint to seek rescission of the Settlement Agreement because Draphix allegedly fraudulently represented that it had not received any orders evidencing confusion between the two companies even though Burch had sent Draphix numerous such orders before the Settlement Agreement was signed. Classroom also amended its complaint to state claims for unfair competition under the Lanham Act, fraudulent misrepresentation, and intentional interference with employment relations.

The case proceeded to a jury trial in the state court on Classroom's claims of unfair competition pursuant to the Lanham Act, fraud, and intentional interference. The jury returned a general verdict in favor of Classroom and awarded compensatory damages of $175,000. The trial court subsequently increased the total compensatory damages award to $444,758 and entered a carefully tailored injunction that prevented Draphix from engaging in certain conduct but allowed it to continue using the name Teacher Direct provided that it place a disclaimer on the cover of its catalogs explaining that the two companies are not affiliated. The state court also granted Classroom's motion to rescind the Settlement Agreement.[3] Both sides appealed certain aspects of the state trial court's postjudgment orders. Classroom appealed, *inter*

---

[3] On February 22, 2007, this court granted Classroom's motion to set aside and rescind the Settlement Agreement based on the preclusive effect of the state court jury's finding that the Settlement Agreement was fraudulently procured by Draphix.

4

*alia*, the trial court's refusal to grant it the full measure of injunctive relief it had requested. Draphix cross-appealed from that aspect of the trial court's order awarding additional monetary relief to Classroom under the Lanham Act. On April 25, 2008, the Supreme Court of Alabama affirmed the trial court's judgment in all respects.

On January 18, 2007, one week after the state trial court entered its final judgment, Classroom amended its complaint in the case at bar ("the second federal action")[4] to state a claim for fraudulent procurement of a trademark registration under 15 U.S.C. § 1120. Classroom's § 1120 claim grows out of Draphix's registration of the name Teacher Direct with the United States Patent and Trademark Office ("USPTO"). As part of the trademark registration process, Draphix's CEO, Jack Womack ("Womack"), submitted a declaration in which he certified that, to the best of his knowledge, the use of the Teacher Direct mark in commerce was not likely to cause confusion, or to cause mistake, or to deceive. Draphix submitted this declaration to the USPTO on August 17, 2005. On October 25, 2005, the USPTO placed the Teacher Direct mark on its supplemental register.

Classroom contends that Womack's declaration was false and fraudulent because he knew at the time he signed it that Draphix

---

[4] Classroom's complaint, which was filed in this court after the state court case commenced, also stated claims for breach of contract and trademark infringement relating to the "Re-Print" mark.

5

had received orders from its customers and from Classroom's customers via Burch evidencing confusion between Classroom Direct and Teacher Direct. Classroom argues that Draphix's fraud is highlighted by the fact that, at the same time it was certifying under penalty of perjury to the USPTO that it knew of no reason to believe that use of the Teacher Direct mark would cause confusion, it was asking this court to force Classroom to produce orders showing confusion in accordance with the terms of the Settlement Agreement and it was secretly receiving copies of such orders from Burch. Draphix argues that the occurrence of a relatively small number of misdirected orders caused by administrative error is inevitable in a high volume business and does not necessarily reflect customer confusion. Draphix also contends that its effort to require Classroom to fulfill its obligations under the Settlement Agreement by producing the orders that it relied upon to support its claims in the first federal action should not be taken as a concession that the orders in question evidenced actual customer confusion.

*Discussion*

**I. *Res Judicata***

Draphix argues that *res judicata* bars Classroom's § 1120 claim. According to Draphix, Classroom actually litigated its fraudulent procurement claim in the state court or, alternatively, could have litigated it in the state court. Classroom contends

that *res judicata* does not apply because it did not litigate the § 1120 claim in state court and because the § 1120 claim is after-acquired.

Under *res judicata*, "a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001). Under Alabama law, this doctrine applies if the following elements are met:

> (1) a prior judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) with substantial identity of the parties, and 4) with the same cause of action presented in both actions.

*Kizzire v. Baptist Health Sys.*, 441 F.3d 1306, 1308-09 (11th Cir. 2006) (*quoting Equity Res. Mgmt, Inc. v. Vinson*, 723 So. 2d 634, 636 (Ala. 1998)). The burden of proving that *res judicata* applies is on the party asserting it (here, Draphix). *See In re Piper Aircraft Corp.*, 244 F.3d at 1296. The parties agree that the first three elements of *res judicata* are met. The only question is whether the fraudulent procurement claim was presented or could have been presented in the state court action.

"The determination of whether a litigant has asserted the same cause of action in two proceedings depends upon whether the primary right and duty are the same in both cases." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1356 (11th Cir. 1998). In addition to acting as a bar to the precise legal theory presented in a prior case, *res judicata* bars "all legal theories and claims arising out

7

of the same common nucleus of operative facts." *Id.* "[R]es judicata applies when the same evidence substantially supports both actions." *Kizzire*, 441 F.3d at 1309.  In this case, the court is not required to decide whether Classroom's fraudulent procurement claim arises out of the same nucleus of operative facts as its state court claims because Classroom did not acquire its fraudulent procurement claim until after the state court case commenced.

In *Manning v. City of Auburn*, 953 F.2d 1355, 1360, (11th Cir. 1992), the Eleventh Circuit held that "[t]he rule that a judgment is conclusive as to every matter that might have been litigated does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated." (quotation marks and citation omitted).  The *Manning* court went on to explain as follows:

> Put differently, we do not believe that the *res judicata* preclusion of claims that 'could have been brought' in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation. Instead, we believe that, for *res judicata* purposes, claims that 'could have been brought' are claims in existence at the time the original complaint is filed or claims *actually* asserted by supplemental pleadings or otherwise in the earlier action. Our decision avoids the potentially unworkable requirement that every claim arising prior to entry of a final decree must be brought into the pending litigation or lost.

*Id.* (quotation marks, footnote, and citation omitted). Therefore, if a particular claim did not exist at the time the prior case was filed, it will not be barred from being asserted in a subsequent

case unless it was "actually asserted by supplemental pleadings or otherwise in the earlier action."  However, the Eleventh Circuit later held that a litigant may only "otherwise" assert a claim through a means that conforms with the rules of procedure in the prior litigation (*i.e.*, amending the pleadings or asserting the claim in the pretrial order). *See Pleming*, 142 F.3d at 1358.  In any event, a party is not required to litigate an after-acquired claim in a pending case merely because the claim accrued during pendency of the case.

Classroom's fraudulent procurement claim could not have actually accrued until the Teacher Direct mark was registered by the USPTO on October 25, 2005.  Classroom filed its state court complaint on August 9, 2005.  Therefore, the fraudulent procurement claim did not exist at the time the state court suit commenced. *See Country Mut. Ins. Co. v. Amer. Farm Bureau Fed'n.*, 876 F.2d 599, 600-01 (7th Cir. 1989) ("[§ 1120] makes sense when 'procure' is taken to mean 'obtain' and little sense when taken to mean 'apply for.'"); *Bernard v. Commerce Drug Co.*, 774 F. Supp. 103, 109 (E.D.N.Y. 1991) ("[T]his court finds that plaintiff's claim for a fraudulent trademark registration cannot be maintained at a point in time prior to procurement of registration."); *see also Gaudreau v. Amer. Promotional Events, Inc.*, 511 F. Supp. 2d 152, 160 (D.D.C. 2007) (collecting authority).  Common sense dictates that a trademark registration cannot be fraudulently procured until the

registration is actually procured.

Even though the fraudulent procurement claim did not exist when the state court case was filed, it must still be determined whether Classroom "actually asserted" the claim during the course of the state court litigation.  Draphix argues that Classroom injected the claim into the state court case by using Draphix's application to register the Teacher Direct mark during its examination of witnesses and by calling it a "smoking gun" during its closing argument.  On the other hand, Classroom contends that it merely used the fact that Draphix had failed to disclose the orders showing confusion to the USPTO as evidence to rebut Draphix's advice of counsel affirmative defense and as circumstantial evidence to support its fraudulent misrepresentation claim.

Draphix correctly points out that Ala. R. Civ. P. 15(b) allows the parties to try issues not raised in the pleadings by express or implied consent.  The implied consent of the parties can be inferred from an opposing party's failure to object to the introduction of evidence raising the disputed issue initially or by the opposing party itself offering evidence relative to the issue. *See Int'l Rehab. Assocs. v. Adams*, 613 So. 2d 1207, 1213 (Ala. 1992).  However, "when the evidence that is claimed to show that an issue was tried by consent is relevant to an issue already in the case, as well as to the one that is the subject matter of the

amendment, and there is no indication at trial that the party who introduced the evidence was seeking to raise a new issue, the pleadings will not be deemed amended under the first portion of Rule 15(b)."  6A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1493 (2008) ; *see also McCollum v. Reeves*, 521 So. 2d 13, 17 (Ala. 1987) (citing Wright & Miller).

The trademark registration document submitted to the USPTO certifying that use of the Teacher Direct mark was not likely to cause confusion was introduced into evidence in the state court trial by counsel for Classroom during its examination of Womack. Classroom's attorney asked Womack about his certification to the USPTO that the registration of the Teacher Direct mark would not cause confusion and whether he knew at that time about the orders showing actual confusion.  Later, Draphix called its trademark attorney, David Larsen ("Larsen"), in an effort both to respond to the issues raised by Classroom's examination of Womack and to establish an advice of counsel affirmative defense.  Classroom questioned Larsen about whether Draphix ever informed him that it received orders evidencing confusion.  Larsen testified that Draphix did not tell him about such orders.  Classroom's counsel also referred to the registration form bearing Womack's signature as a "smoking gun" during his closing argument.

Although it is true that Classroom made the alleged fraudulent registration of the Teacher Direct mark an issue in the state court

11

trial, the record shows that it did so only to support its own existing claims and to rebut Draphix's defenses.  Proving that Womack failed to disclose to the USPTO that Draphix had received orders showing confusion between Classroom Direct and Teacher Direct was circumstantial evidence relevant to Classroom's fraudulent misrepresentation claim against Draphix.  Similarly, showing that Draphix's trademark counsel who assisted it in the registration process was not aware of the orders showing confusion helped rebut the advice of counsel affirmative defense.  The use of the fraudulent procurement issue to support or rebut claims or defenses already at issue does not amount to an express or implied agreement to add the fraudulent procurement claim to the state court suit.[5] *See Sherrod v. Sch. Bd. of Palm Beach County*, 2008 WL 926400 at *1 (11th Cir. Apr. 7, 2008) (noting that *res judicata* does not bar claim even though "plaintiff discussed the facts supporting the subsequent claim in support of his claims in the prior case").  As recognized by the Eleventh Circuit in its recent

---

[5] In *Pleming*, a plaintiff who had previously sued her employer for discrimination sued the same employer again for incidents of alleged discrimination that occurred while her first suit was pending. 142 F.3d at 1355.  The plaintiff mentioned the subsequent incidents of alleged discrimination in her summary judgment briefs in the first suit for the purpose of rebutting the employer's proffered non-discriminatory reason for denying her the position she sought. *Id.* at 1358-59.  After the defendant employer was granted summary judgment in the first suit, the plaintiff filed another discrimination suit complaining about the incidents of alleged discrimination that occurred after the first suit was filed.  The employer argued that her claims were barred by *res judicata* because she raised the after-acquired claims in the first suit.  The Eleventh Circuit held that *res judicata* did not bar the employee's claims because her mentioning of the subsequent episodes of alleged discrimination in the first suit was "insufficient to actually assert those claims in the prior litigation." *Id.* at 1359.

review of an aspect of this case, "[t]he state court action and the second federal action simply raise different causes of action and are thus different lawsuits, even if evidence presented in one may also be presented in the other." *Classroomdirect.com*, 2008 WL 185512 at *5. Therefore, *res judicata* does not bar Classroom from asserting its § 1120 claim in this case.[6]

It is anybody's guess what the state court judge would have done if, during trial, Classroom sought a continuance and leave to amend to add the fraudulent registration claim. In any event, it

---

[6] Draphix's argument, stated in a footnote of its reply brief, that the *Rooker-Feldman* doctrine bars Classroom's § 1120 claim is unavailing. The *Rooker-Feldman* doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22 (2005). The *Rooker-Feldman* doctrine is "a narrow doctrine" and "is not simply preclusion by another name." *Id*. at 464-66. Here, Classroom is not complaining of an injury caused by a state court judgment. Instead, Classroom is complaining of an injury caused by Draphix's use of an allegedly fraudulently procured trademark. The state court's failure to remedy the injury to Classroom's satisfaction "does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state court judgment." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005). The fact that the state court declined, in the exercise of its equitable powers, to enjoin all uses of the Teacher Direct mark, as requested by Classroom, does not mean that the injunction caused the continued use of the mark--it merely failed to prevent it. Furthermore, the state court judgment was not rendered before the district court proceedings commenced. Classroom filed its present complaint in this court on August 23, 2006, but the state trial court did not render its final judgment until January 11, 2007 and the Supreme Court of Alabama did not render its decision until April 25, 2008. *See Guttman v. Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006) ("*Rooker Feldman* applies only to suits filed after state proceedings are final."). Finally, Classroom is not inviting this court to review or reject the state court's judgment. As noted by the Eleventh Circuit in its opinion affirming this court's grant of summary judgment to Classroom on Draphix's abuse-of-process counterclaim, "it is axiomatic that merely because Draphix can engage in some use of the 'Teacher Direct' mark under some laws, that does not necessarily mean that Draphix can engage in use of the 'Teacher Direct' mark under other laws." *Classroomdirect.com*, 2008 WL 185512 at *5. Stated differently, awarding monetary damages to Classroom based on conduct that the state court declined to enjoin does not require this court to review or reject the soundness of the state court's exercise of its equitable powers in formulating the injunction.

did not happen, rendering it pure speculation as to what effect it would have had on the *res judicata* question.

## II. 15 U.S.C. § 1120

Classroom argues that it is entitled to summary judgment on the merits of its fraudulent procurement claim because Draphix submitted a declaration to the USPTO swearing that there was no likelihood of confusion while in possession of orders from customers that evidenced actual confusion. Draphix, on the other hand, in addition to its *res judicata* argument previously rejected, contends that it is entitled to summary judgment both because Classroom was not damaged by the registration of the Teacher Direct mark and because it did not knowingly make a false representation to the USPTO.

Section 38 of the Lanham Act, 15 U.S.C. § 1120, provides as follows:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

Draphix insists that Classroom cannot prevail under § 1120 because it did not sustain any damages as a consequence of the registration of the Teacher Direct mark inasmuch as a trademark owner's right to use a mark does not depend upon registration. However, the court agrees with the Eighth Circuit's holding in *Landstrom v. Trope*, 189

14

F.2d 46, 50 (8th Cir. 1951), that "§ 1120 means that any person who procures registration of a trade-mark by a false declaration is liable in a civil action in the federal court to any person injured by the trade-mark 'for any damages sustained in consequence thereof', that is, resulting from the use of the 'mark' while falsely registered, and not an injury resulting from the false declaration solely." *See also* 6 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* 31:86 (4th ed. 2008) ("Any damages must be proximately caused by assertion or use of the fraudulently procured registration, not solely from the false declaration."). Here, Classroom seeks cancellation of the Teacher Direct mark and "compensatory damages and profits associated with the defendant's use of the TEACHER DIRECT mark since the jury verdict in the state court case." Because Classroom is seeking damages related to Draphix's use of an allegedly fraudulently procured trademark, it is seeking precisely the kind of relief that § 1120 was designed to provide.

The parties also disagree with respect to whether scienter is an element of a § 1120 claim. There are no binding precedents on this subject. In fact, the question has received surprisingly little attention in federal jurisprudence. Classroom contends that the use of the disjunctive "or" in the phrase "false or fraudulent" means that a declaration that is merely false, even if not fraudulent, should give rise to liability under § 1120. However,

15

the weight of authority suggests that a plaintiff should be required to prove a "knowing falsity." *See* 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* 31:88-89 (4th ed. 2008); *see also United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000) (requiring proof of intent). Even the principal case cited by Classroom notes that "[a] trademark applicant commits fraud in procuring a registration when it makes material representations of fact in its declaration which it knows or should know to be false or misleading." *Medinol, Ltd. v. Nuero Vasx, Inc.*, 67 U.S.P.Q. 2d 1205, 2003 WL 21189780 at *5 (T.T.A.B. May 13, 2003).

The need to incorporate a scienter element into § 1120 in this case is buttressed by the language of 15 U.S.C. § 1051(a), which sets out the requirements for an application for trademark registration. In detailing the requirements for the verified statement that must be included in the application, § 1051(a)(3)(D) provides that the statement has to specify that:

> **[T]o the best of the verifier's knowledge and belief**, no other person has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such other person, **to cause confusion, or to cause mistake, or to deceive** . . .

(emphasis added). The use of the phrase "knowledge and belief" in the above-quoted language indicates that an honest, good faith mistake in a verified statement does not amount to a "false or

fraudulent declaration or representation" giving rise to liability under § 1120.

With this standard in mind and after reviewing the briefs and evidentiary submissions, the court finds that Classroom's fraudulent procurement claim presents genuine issues of material fact. Although the court is troubled by Draphix's failure to inform Classroom, the court, and the USPTO about its receipt of orders showing confusion between Classroom Direct and Teacher Direct, it cannot find Draphix's trademark procurement to be false or fraudulent as a matter of law. Therefore, the fraudulent procurement claim will be resolved at trial, along with the issue of damages on Classroom's breach of contract and trademark infringement claims.

## Conclusion

For the foregoing reasons, the cross-motions for summary judgment on the § 1120 claim are **DENIED**. Draphix's objection to Classroom's alleged untimely filing of evidentiary material, deemed a motion to strike, is **MOOT**. The case is **SET** for final pretrial conference at **9:30 a.m.** on **July 30, 2008** in accordance with the accompanying pretrial instructions.

DONE this 8th day of July, 2008.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

17